# Lucy v. Tenn. & Coosa Railroad Co.

### Statutory Action in nature of Ejectment.

1. *Adverse possession, as conferring title.*—Adverse possession of land, continuing unbroken for ten years, confers a title which will support or defeat an ejectment, whether held under color or claim of title, or under a mere trespass; but, while a possessor under color or claim of title may defeat a recovery by showing a superior outstanding title in a third person, without connecting himself with it, a mere trespasser can not, nor can he supplement his own possession by proof of possession by other antecedent trespassers; and while a possession under color of title is presumed to be co-extensive with the boundaries of the tract described in the written instrument under which it is claimed, that of a trespasser is limited to the portion actually occupied.

2. *Same.*—Possession of land, unexplained, is presumed to be held

[Lucy v. Tenn. & Coosa Railroad Co.]

in subordination to the title, and the *onus* is on the possessor to show that it is adverse; and to establish this as against the true owner, he must show that the latter had knowledge of his claim, or that it was so open and notorious as to raise a presumption of notice.

3. *Declarations by person in possession.*—The declarations of a person while in possession of land, to the effect that he is holding as agent of another, are admissible as evidence.

4. *Adverse possession between agent and principal.*—The possession of an agent does not become adverse to his principal, until there has been an open disclaimer of the principal's title, and notice thereof brought home to him.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This was a statutory action of ejectment, brought by the appellants against the appellee corporation; and sought to recover a certain strip of land described in the complaint. The evidence is set out at length in the opinion. In addition to the evidence as found therein, the defendant introduced evidence tending to show that one Hill held the land for Gilliland, Howell & Cook, of South Carolina. The court gave the general affirmative charge for defendant, to the giving of which plaintiffs duly excepted.

Upon the evidence, as adduced, the plaintiffs requested the court to give the following written charges, and duly excepted to the refusal to give each: (1.) The affirmative charge. (2.) "The court charges the jury that the evidence before them is not sufficient to show an outstanding title in Gilliland, Howell & Co." (3.) "The court charges the jury that the evidence before them is not sufficient to show adverse possession in the defendants, or either of them." (4.) "The court charges the jury that, under the evidence in this case, the law presumes that the defendants went into possession of the land sued for under and by permission of said W. E. Lucy, or the plaintiffs, in this suit, and the burden of proof is on the defendant to show that such possession has become adverse to the plaintiffs, and when same became adverse, and the law presumes the defendants held under the plaintiffs until they show such adverse possession." (5.) "The court charges the jury that, if they believe the evidence that the lands sued for were suitable for farming purposes, then the cutting of timber off of it by O. P. Hill and Curry for coal before the war, and the cutting of firewood by O. P. Hill in 1866, which was hauled by Miller, is not sufficient to constitute adverse possession." (6.) "The court charges the jury that the prescription or statute of twenty years has no application to this case, as the evidence does not show that the land sued for has been in the adverse possession of other persons than the plaintiffs for twenty continuous years before the bringing of this suit." (7.) "The court charges the jury that

[Lucy v. Tenn. & Coosa Railroad Co.]

there is no sufficient evidence of any adverse possession of the land sued for up to and before the building of the road in 1871 by Kyle and others." (8.) "The court charges the jury, that if they believe from the evidence that the defendants were originally trespassers on the land sued for, not going in under any claim or title from any one, then they can not defeat the plaintiffs' suit by showing an outstanding title in Gilliland, Howell & Co." (9.) "The court charges the jury that if they believe the evidence, the plaintiffs have shown the legal title to the lands sued for in themselves, and the law presumes that when the defendant went into possession of the same it went into possession under the plaintiffs, or their ancestors, and its possession would not become adverse until it set up some claim or right to the land." (10.) "The court charges the jury that the possession of the defendant of the land sued for, and the exercise of acts of ownership over it, by using it as a railroad track for running its trains over it, of itself is not sufficient to show an adverse possession. There must be more. Such possession and acts of ownership must be accompanied with the intent to claim title thereto." (11.) "The court charges the jury, that if they believe from the evidence that the defendants are intruders upon the possession of the plaintiffs, having entered with no claim or color of title, then they can not set up a title in Gilliland, Howell & Co. to defeat this suit." (12.) "The court charges the jury, that the statute of limitations of ten years does not apply to a case like this. Title to a right of way, can only be acquired by deed or a prescription of twenty years." (13.) "The court charges the jury, if they believe from the evidence that the Eufaula, Opelika, Oxford and Guntersville Railroad Co. built the road from Gadsden to Attalla in the year 1871, and that the said company was in adverse possession of the land sued for, then this possession can not be tacked on to any possession of the defendant to the suit to make out ten years adverse possession of the defendant, there being no evidence before the jury that defendant claims under the said Eufaula, Opelika, Oxford & Guntersville Railroad Co."

There were verdict and judgment for defendants. The plaintiffs prosecute this appeal; and assign as error certain rulings of the lower court on the evidence, and the giving of the charge asked by defendants, and the refusal to give the several charges requested by plaintiffs.

AIKEN & MARTIN, for appellants, cited 3 Brick. Dig, p. 843, §§ 558, 559.

[Lucy v. Tenn. & Coosa Railroad Co.]

W. H. DENSON, *contra*, cited *Kirkland v. Trott*, 66 Ala. 417; *Baucum v. George*, 65 Ala. 259; *Dothard v. Denson*, 72 Ala. 541; 1 Brick. Dig., p. 621, §§ 62, 63, 67; 3 Brick. Dig., p. 16; §§ 2, 3, 4.

COLEMAN, J.—The bill of exceptions in many respects presents an indefinite and unsatisfactory statement of facts. In more than one instance it is impossible to understand the bearing of certain statements made by witnesses, in fixing the precise location of the strip of land in controversy.

Plaintiffs introduced a certified copy of the original patent of the United States Government, dated April 10th, 1848, to William E. Lucy for the north-east quarter of the south-west quarter of section 4, township 12, range 6 east, in the Coosa Land District, the possession of the patentee under the patent, his death, and that plaintiffs were his only heirs. The evidence then showed that the strip of land sued for was a part of the forty acres granted by the patent. *Prima facie* this proof entitles plaintiffs to recover in ejectment. Defendants pleaded not guilty, and relied upon the statute of limitations of ten and twenty years as a bar to plaintiffs' action. After the evidence was closed, the court directed the jury, if they believed the evidence, to find the issue for the defendants.

The strip of land described in the complaint constitutes a part of the road-bed of the railroad defendant. A few well settled principles of law will be here stated, which control the rights of the litigants in this case.

An adverse possession of land which continues unbroken for ten years will confer a title which will sustain as well as defeat an action of ejectment, and the principle applies alike where possession is held under color or claim of title and where the possession was that of a mere trespasser.—*Burks v. Mitchell*, 78 Ala. 63; *Wilson v. Glenn*, 68 Ala. 386; *Smith v. Roberts*, 62 Ala. 83.

An important distinction between one who takes and holds possession under color or claim of title and a mere trespasser prevails. In the former, a defendant may defeat plaintiff's recovery by showing a superior outstanding title to plaintiff in a third person, without connecting himself with it, his possession being good against all others except the true owner. *Guilmartin v. Wood*, 76 Ala. 211; *Crosly v. Prigden*, 76 Ala. 387. A mere trespasser having no color or claim of title, not standing in the relation of tenant to his landlord, heir to his ancestor, or vendee to his vendor, or other relation, to show a continuity of the adverse holding, can not set up an outstanding title in a third party, or prove different entries at different

times by different persons, which merely show a succession of trespasses, to defeat the plaintiff's title or to support his own. *Ross v. Goodwin*, 88 Ala. 395; *Riggs v. Fuller*, 54 Ala. 141; *Ladd v. Dubroca*, 61 Ala. 25; *Bell v. Denson*, 56 Ala. 448. Another distinction is, the possession of a trespasser is confined to the premises actually occupied by him, the "*possessio pedis*," whereas the possession of one claiming under color of title by a written instrument is generally construed · to be coextensive with the boundaries described in the written instrument.—*Burks v. Mitchell*, 78 Ala. 63; *Stovall v. Fowler*, 72 Ala. 78; *Childress v. Galloway*, 76 Ala. 133.

Mere possession of land is not *prima facie* adverse to the title of the true owner, but such possession is presumed to be in subordination to the title. When the title is shown not to attend the possession, but that it resides in another, the law not favoring wrong, will not presume that the possession was taken or is held and claimed in hostility to the title. The burden of proving the possession adverse, hostile to the title of the true owner, rests upon the party asserting it.—*Dothard v. Denson*, 72 Ala. 544. One in possession may claim the right in hostility to the true owner, but to make such possession adverse, he must show that the true owner knew that he claimed in his own right, or a right hostile to. the true owner, or it must be so open and notorious as to raise a presumption of notice.—*Dothard v. Denson*, 72 Ala. 544; *Alexander v. Wheeler*, 69 Ala. 332; 57 Ala. 304.

There was evidence tending to show that one Dozier Thornton was in possession of an undivided half interest of the land from 1855 to his death in 1860. That after his death, Kyle took possession of the Thornton interest, but in what way is not shown. Whether Thornton's possession was under claim of right or subordinate to the patentee is not stated. After Kyle took possession, he "claimed in his own right until now." If Thornton's possession was adverse and Kyle succeeded to his interest and continued to hold adversely, and a knowledge of his adverse holding was brought home to the owners of the title, or so open and notorious as to raise the presumption of notice, the length of time he was in possession as disclosed by the testimony would present a complete defense, and if the defendant railroad held in privity to the possession of Kyle, this defense would be available to the railroad defendant; or, if the defendant has been in open notorious adverse possession continuously in its own right for more than ten years, such possession would be a bar, although the original entry by the railroad was a trespass. The record fails to show that either the possession of Thornton or Kyle, or of the defendant, was

[Lucy v. Tenn. & Coosa Railread Co.]

hostile and adverse to plaintiffs, or, if so, that knowledge of such adverse holding was brought home to plaintiffs, or was of that open and notorious character as to raise the presumption of notice.

Plaintiffs further insist they are entitled to recover a half interest in the property, even though the claim through Thornton may present a defense to the other half interest. There was evidence tending to show that Hill, up to the time of his death in 1860, as the agent of some parties living in South Carolina, was in possession with Kyle. The declarations of Hill, while in possession, that he held as agent for parties living in South Carolina, were properly admissible.—*Kirkland v. Trott,* 66 Ala. 417; *Wright v. Smith, Ib.* 516; *Baucum v. George,* 65 Ala. 260; *Dothard v. Denson,* 72 Ala. 541.

There is no evidence in the record tending to show the character of the claim and possession of those under whom Hill held as agent, whether in subordination to the true owner, or in hostility to it. The possession of an agent does not become adverse to that of his principal, until there has been an open disclaimer of the title under which he entered, and such disclaimer brought home to his principal.—*Baucum v. George,* 65 Ala., *supra.*

It is earnestly contended that the defendant succeeded to all the rights of the Eufaula, Opelika, Oxford & Guntersville R. R. Co.; but a careful examination of the record fails to show any privity of claim or possession between them. The bill of exceptions purports to set out all the evidence, and in such cases we are not at liberty to indulge in presumptions as to facts.

There is no plat or map showing the relative position of Wragg's Mill, Christopher's fence and cut, to the strip of land in dispute. Without some such aid, or a more specific description, it is impossible to clearly understand witnesses, when they testify as to "this side" of Christopher's fence, or between "here" and Attalla. The proof abundantly establishes that plaintiffs have been out of actual personal possession for a sufficient length of time to perfect a bar, and defeat a recovery, but the proof as disclosed in the record fails to show that the possession of others, whether claiming under color of title or as trespassers, was so open and notoriously adverse to the title of plaintiffs, as to raise a presumption of notice of such claim. It was error to give the affirmative charge for the defendant.

There was no error in refusing the general charge for the plaintiff. Some of the charges numbered 2, 3, 4, 5, 6, 7 and 12, invade the province of the jury, and others were misleading, and for one or the other reason were properly refused.

[Cogsbill v. Mobile & Girard Railroad Co.]

Charges 10 and 13 were misleading and withdrew from the jury the consideration of other evidence in the cause, and for these reasons were properly refused, Charges 8 and 11 assert correct propositions of law and should have been given. In charge No. 9, the use of the phrase "set up" may have had a tendency to mislead. The jury may have supposed it referred only to declarations of ownership, whereas actsof ownership may show an adverse possession.

Reversed and remanded.

*Statutory Action in nature of Ejectment.*

